The next case for argument is 24-1900 Kammunkun v. Defense. Sir, we're ready whenever you are. Mr. Bonk. Always wise to have a drink before you address the court. And I apologize in advance, Your Honor, I'm a little bit hoarse. I'm just coming over some illness, and it's still impacting my voice, so if my projection is a little bit less than it might be. Hopefully you're not contagious. Not at all, Judge. I verified that before here. Well in advance. Thank you. Good morning, Your Honors. And may it please the court, Christopher Bonk on behalf of Petitioner Diane Kammunkun. Here, the deciding official ordered an investigation following, or based on, her own allegations that she crafted, then altered the findings, directed her top subordinate to consider an adverse action based on those altered findings. That just doesn't comply with the record. You're just first statement. On page 19 of your blue brief, you say, Lieutenant Colonel Kramer issued a 32-page investigative report directly to Ms. Winbush. And you cite the appendix of 1393 to 1424. When I turned to the next page, it was numbered 33. 33 denotes the 32 enclosures that Colonel Kramer included in his report. There are hundreds of pages of evidence, interviews, statements of people who self-reported to protect themselves. And they stretch across the two appendix volumes from 3887 to 4325. Doesn't that misrepresent the scope of the content of Lieutenant Colonel Kramer's report? It's not a 32-page report. Certainly, Judge. And I think the findings is what we're referring to. And that is the findings that the factual findings on the particular allegations is what we're referring to the report of investigation, I think begins at 1396 there, where Kramer's ROI. You didn't mention that the investigation of the Riverside incident was the third investigation over the course of a couple of years in which the agency found that Kumungan and others repeatedly mishandled classified documents. But the board noted it on appendix page 4. Why didn't you mention that or discuss it? Because here, Judge, what I think that concerns us is the due process violation. And the due process violation occurs when Ms. Kumungan takes the allegations that she raised, receives the ROI report from the investigating officer at 1396, and then revises those findings materially. Her revised change expanded findings at 1389 on the appendix. That's where the due process violation occurs. You characterize Windbush's involvement in the pre-termination process in a number of ways. And I circled these in the blue brief. That she crafted the initial allegations, revised the findings of Lieutenant Colonel Kramer's report, gave instruction to Mr. Gagne to propose termination. But the board's findings are different. Factual findings are different. How can we accept your characterization of events when our review is governed by a substantial evidence standard and there's lots of evidence in there? Because, Judge, here what we're looking at is ultimately a issue or question of pre-decisional due process. That question, this court refused to know though. Was there a violation of Ms. Kumungan's due process rights? Didn't the board, I may be misremembering, but didn't the board reject the allegations you made as to the nature of her participation in the investigation? That's correct, Judge. And if that's true, you can't say, we're not going to accept your version of that. We're going to accept the board's version of that unless you can establish that there's no substantial evidence to support. And whether or not you're raising a due process claim or some other claim, that doesn't change that fact in terms of what the record is for us to review, right? I don't understand your answer. I think the distinction here, Judge, is a lot of the focus that the board centers, and you're right, they disagree with the characterization of the materiality really is the essence of it. The materiality of the revisions to the allegations. And that's where I think it really gets into the crux of our argument here, is where you have those material revisions, where you have those material alterations, the factual findings that flow from that are largely irrelevant. The assertions of the determinations, for example, it's raised in the respondents brief as well, but also in the board decision, of course, that a lot of these revisions are essentially a conclusion that they're harmless, right? The changes that Ms. Winbush made are not material. They do not impact at the end of the day. And I think that is missing the point here. What we're caring about, what we're focusing on here is, if you have this pre-decisional investigative involvement, the depth of Ms. Winbush's involvement in altering these investigative findings, taking the ROI conclusions, and altering them in a material fashion, that then rises to this level of investigative interference that then brings this into a pre-decisional due process violation consideration. And that, the score can look at de novo. As a matter of fact, they held below that she didn't alter them in a material fashion. They didn't. That's correct, Judge. So and what is our review of the finding that the alterations were not material? Isn't that a deferential standard of review? It could be, Judge. But I think it could be, or it is. I think you need us to find that there's a due process violation, even accepting the finding that the changes in the memo, at least that portion of your argument, were not material. So I don't fully agree with that, Judge, I think. I think really we do need, and part of our central core of our argument here is that these revisions were indeed material. And we go into, I think, a reasonably amount of depth in our briefings on why the judges and the conclusions at the board level are erroneous on this. But you agree that our review of the finding of non-materiality of the changes in the Windbush memo is for substantial evidence. You agree with that? Not wholly, Judge. And here's the distinction I want to try to make here, is I think the approach that we're looking at here is that what the board didn't do is look at these materiality revisions, or this consideration of whether these were material or not from the subjective standard. And I think the approach taken by the board errs into the subjective consideration. And the same thing within the respondent's briefing on this as well, where digging into the materiality determination, that conclusion as to whether or not the revisions were material or not, centers in no small part on this later assessment or determination of did the board uphold this? Did the board ultimately uphold the allegations? And I think that is an error of law where the board goes and approaches this in a subjective fashion. What really needs to happen is looking, and really I think very instructive in the circumstance of Stone, and we're looking at the situation where we have pre-decisional due process violations, pre-deprivation due process violations. So my understanding is you say the board and we should apply an objective standard, basically. Would a reasonable person think Ms. Windbush was biased, as opposed to a factual, subjective standard? Was she proven to be biased? Is that your position? That's the first summation, Judge. But you get that objective standard from cases like Stone that I think involve reliance on ex parte information that may not be in the record, which really isn't this situation, is it? It's not exactly the situation, Judge, but it's very well integrated. It's very well interlinked. Everything you rely on in that context is about judges, right? I'm sorry, Judge, I did not hear the question. It's about judges and communications, whether judges are disqualified. Some of those cases, certainly judges. Can I ask you then, before your time runs out, there are three cases that I think are really relevant to this appeal. Two of our cases, DeSarno and Hanley, which deal with this type of situation of the alleged due process violation because of the same person. And then we've got Loudermill having us. So can you just tell us why our conclusion is not governed by that precedent? And let me throw in Withrow as well. And Judge, I appreciate that because I was going to as well. Very easily distinguishable, I think, from DeSarno, Hanley, and all that. And here we have a wholly different role, a wholly different level of involvement from the deciding official than we're looking at DeSarno and Hanley. DeSarno, of course, we have the deciding official being both proposing a deciding official. Hanley, the deciding official ordering the investigation into a claim of sexual harassment. But here, those in and of themselves, of course, under the sports case law, it doesn't quite rise to that level of due process violation. But there's more here. There is a fundamental additional involvement by Ms. Windbush in this circumstance. So for example, with Hanley, where the deciding official ordered the investigation. They received a claim of sexual harassment. They ordered the investigation. They moved forward with it. They acted as the deciding official. Windbush went further here. She framed the allegations. She subsequently then revised the allegations. She didn't simply receive the allegations or hand off the allegations. When you say she revised them, isn't it fair to say that she summarized them? I do not believe so, Judge. And that really goes, I think, it's a OK, but just back to Hanley. Hanley involved in a situation where the proposing adjudicator was the same as the deciding official. In this case, it's stronger against you, I think, given that there's an intervening proposing official. Because all she said is, you should look at whether or not there's an adverse action here. And there was an independent proposing official. And Hanley was the same person. Investigation, proposal, deciding, same person. So I would disagree, Judge. I do think our situation is stronger than in Hanley. Do you disagree? Is anything that I said wrong, other than it's stronger than you, describing Hanley? So no, Judge. I think your summary of the case law on that is accurate. The issue here, and I think our situation is distinct. We have a deciding official, for Hanley, for example. We have an individual serving as both the proposing and deciding official, ordered an investigation, received the investigative findings. They did not go back and change the investigative findings. They did not go and intervene in the investigation. They received it. And that really goes to this crux of the issue of, was there a meaningful opportunity to respond? And there's plenty of case law out there, as you pointed out here with some of these other case references, where the deciding and proposing official can be the same person. They can receive investigative findings, propose reasonable action based on the independent conclusions, and a reasonable response under that circumstance is still possible. Not so here. Here, Ms. Winbush framed the allegations, received investigative findings on that, altered those investigations to comport back with her initial allegations, and then sent those on with an instruction to her direct supportant to find adverse action based on her revised allegations. Did you say to find adverse action or to consider? Or to consider, I think, correct, Judge? I think there's a big difference. And then as part of her capacity, is Director Winbush male or female? Female, I believe. OK. During her duties as the deciding official, there's no due process deficiency there, right? I mean, she gave your client the interviews, gave her an opportunity to respond to everything. There's no defect in the way that was handled as a deciding official, correct? It's a defect in her serving as a deciding official, considering the circumstances. What about Hanley? I'm not Hanley.  No, and DiSarno, again, proposing a deciding official, serving as the same individual, I think that's fine in that circumstance. Again, we don't have in DiSarno the situation where there is an intervening or a involvement, excuse me, a interference by the proposing official, excuse me, the deciding official in those investigative conclusions when they move forward. I see I'm in my rebuttal time there, Your Honors.  Good night. Thank you. Good morning. Good morning. And may it please the Court. As the Court has heard, Ms. Kamunkan's appeal to the Court This is so confusing. Isn't this the Department of War now? This component of DOD, they handle issues related to prisoners of war. As the Court has heard, Ms. Kamunkan's appeal turns on a disregard of this Court's due process case law, as well as the evidence. I will begin, and I will touch on briefly Ms. Kamunkan's bias arguments, beginning with the argument that the agency was biased because of her claim that acting director, Winbush, framed the allegations against Ms. Kamunkan and ordered an investigation into those allegations. First of all, Your Honors, the board decisions incorporate extensive evidence establishing that it was two eyewitnesses, contract employees, who Yeah, but that has nothing to do with that. You can take it, given that we've read those briefs. Yes, I just wanted to gauge what was important for Your Honors to hear. I mean, the key issue here is that the eyewitness statements, the witness statements of eyewitnesses are what began this investigation process. First of all, after returning from California, one of the contract employees provided a written statement to her supervisor. No, as Judge Wallach pointed out, we know what happened. OK, thank you, Your Honor. We know what brought us here. I'm moving on here. But now we're here, and we're looking at whether or not this series of events was sufficient to establish a due process violation. So why don't you tell us why you don't think that's the case. It does not establish a due process violation based on this court's case law and the record evidence and the evidence. Under Norris, as well as, as Your Honor mentioned, Hanley and Asarnow, the idea that a deciding official can play, or one individual can play, multiple roles, including as an investigator, including having knowledge of the misconduct, the facts related to the misconduct, including serving as a proposing official, do not offend due process. So clearly, Ms. Kamunkan. does address what Ms. Kamunkan argues is that that deciding official crossing some sort of line and making all sorts of substantive and material revisions to both the allegations and the findings at the end of the day. Have we addressed that kind of scenario? Your Honor, I would say the court's best case in terms of covering these scenarios would be Hanley involving, and beginning to address Your Honor's question, there was no crossing the line. The court's cases, including Hanley, stand for the proposition that a deciding official can be involved in the investigation, can have knowledge of the misconduct, can serve in the role of a proposing official. Norris does as well. Norris is also a case where this court looked at a deciding official that had knowledge of the underlying conduct. So nothing presented here offends due process under this court's cases. What is our standard of review of the board's finding that Ms. Winbush's involvement or modification of the memo, for instance, was not material, was not substantive? Do we review that deferentially, or do we decide that ourselves, de novo? Your Honor, defers to the board's findings. And here, the board heard testimony from acting director Winbush as to why she prepared a memo. Acting director Winbush testified in front of the board that she prepared that memo in order to summarize Lieutenant Kramer's report of investigation and also to make it more succinct and that was the extent of her involvement. But would that be any different even if her involvement were greater than that? The proposing official makes decisions, decides what the charges should be, what the specifications are. It's pre-final decision, but it's the preliminary determination. And our cases say that that same person can be the deciding official. It seems to me what comes out in our cases that's clear has to do more with her having had a fair opportunity to respond. Yes, Your Honor. I mean, that's kind of stone where the deciding official goes outside the record with ex parte communications. And it's inherent in a lot of our cases about her having a fair opportunity to respond to these allegations, which I think she did. She did. She clearly did. They intimate that because acting director Winbush was a deciding official that they were somehow entitled to an impartial decision maker. That's clearly not the standard, Your Honor. They cite, as Judge Wallach pointed out, they cite a list of inopposite cases from the judicial recusal context, from the ex parte communications context, from the context involving quasi-judicial proceedings. None of those cases provide the appropriate standard. And what does Laudamill tell us what's required? I'm sorry? Laudamill. A notice of the charges, an opportunity to review the evidence, and an opportunity to respond to the evidence. That is what due process requires. And it's clear that Ms. Kamunkan had three opportunities to respond to the evidence, including two written and one oral. So they really don't have an argument in terms of whether or not she had an opportunity to respond, Your Honor. And as for the subjective standard that counsel Ms. Kamunkan argues, clearly, again, those cases that they rely upon for the subjective standard are an opposite. The burden was on Ms. Kamunkan to provide evidence of a due process violation. And she failed to carry her burden and to do so as the board recognized in view of the record evidence, as well as the governing law. If Your Honor has no more questions, thank you. We ask that the board's decision be affirmed. Counsel, am I correct that under current authority, the deciding official could be the investigating official? They can, Judge, yes. And that's their work. If they're the investigating official, they can write a report. Am I correct about that? They could write a report, yes, Judge. So I'm sorry, Ms. Winthrow? Winbush. Winbush. Could have written the report without Lieutenant Colonel Kramer having any input to it, right? She could have written the report. Then that would have been consistent with due process, right? Not necessarily, Judge. And that's really, I think, a really important distinction. And I know you mentioned Winthrow before, and we didn't get to it quite a bit earlier. But that's a really important point that I think is. You just agreed with me. No, no. You agreed with me that she could be the investigating. She can be the investigating official. And as the investigating official, she can draft a report. Yes, Judge. So if she can draft a report, can she edit that draft after she finishes writing it? Certainly, Judge. Then why is it inconsistent with due process if she edits Lieutenant Colonel Kramer's report? Because here we have an interference in the investigation, Judge. We have, and there's additional involvement here by Ms. Winbush that we're not looking at in those circumstances. And I think in Winthrow, the court makes that clear, leaves that door open. The court in Winthrow, of course, says you can be an investigating official or an investigating individual and be an adjudicator at the same time. That's fine. The issue is, and the court leaves open this issue of, there can still be circumstances that the courts need to consider whether or not that overlap, the circumstances give rise to a risk of unfairness that's intolerably high. In a lot of those circumstances, the additional cases that that court cites to from various circuits involve the depth of involvement in that investigatory stage. And so here we have Ms. Winbush. And I think really important to flag for this is the structure of this approach. Ms. Winbush put together initial allegations, sent them for investigation. When she received back those investigative findings, she did not just hand that off to her direct subordinate to pursue an adverse action or consider adverse action. Rather, and her allegations would have still been there. She went back and materially revised, changed the investigations, issued a whole new document that summarized her own understanding of what the allegation should be, which comported them back to her allegations. She took additional interfering actions, additional interfering steps there that step past this court's comparable precedent. OK. Thank you. We thank both sides. The case is submitted. Thank you, Judge.